# THE SUPREME COURT

OF THE

## STATE OF NEVADA.

## JULY TERM, 1877.

[No. 815.]

## JOHN P. FOULKS, RESPONDENT, v. B. F. RHODES, APPELLANT.

COUNTER-CLAIM—COPARTNERSHIP ACCOUNT—PLEADINGS.—As a counter-claim to an action upon a promissory note and upon an account for goods sold, etc, the defendant claimed damages for an alleged breach of contract upon the part of plaintiff, and alleged that plaintiff and defendant were copartners in the saw-mill business, and that it was agreed to put in as a part of defendant's contribution to the capital stock of the partnership, the notes and accounts sued upon. To this plea plaintiff demurred, upon the ground that defendant could not plead an unsettled partnership account as a counter-claim to a demand which is independent of the partnership: *Held*, that the demurrer was not good, because if the averment in the answer was true, the demands sued upon were not independent of the partnership but were a part of the partnership affairs.

PAROL EVIDENCE—WHEN ADMISSIBLE.—Parol evidence is admissible to show an agreement between the parties that the note executed by defendant to plaintiff might, upon the consideration of the formation of a copartnership, be paid by crediting defendant with the amount of the note in the partnership accounts. This would not be a variation of the written agreement, but a satisfaction of it.

COUNTER-CLAIMS—ACTIONS UPON CONTRACTS.—In an action arising upon contract, any other cause of action arising also upon contract and existing at the time of the commencement of the action is a good counter-claim.

VOL. XII.—15

IDEM—COPARTNERSHIP ACCOUNTS—INSOLVENCY OF PLAINTIFF.—The defend-
ant in an action brought against him to recover the amount due upon
a promissory note alleged that plaintiff and himself were copartners;
that the partnership accounts were unsettled; that upon a settlement
the plaintiff would be found largely indebted to defendant; that plaintiff
is insolvent, and that defendant will be irreparably damaged by being
compelled to pay plaintiff the amount of the note: *Held*, that these aver-
ments if true, afford good grounds for invoking the equitable powers
of the court to settle the partnership accounts before trying the legal
issues involved in the case.

IDEM.—Where the defendant and plaintiff entered into a written agreement
to construct a flume, and the defendant claimed damages for a breach of
that agreement: *Held*, that the damages might be ascertained without
settling the accounts of the partnership existing between plaintiff and de-
fendant in the saw-mill business.

APPEAL from the District Court of the Second Judicial
District, Washoe County.

The facts are stated in the opinion.

*Thomas E. Haydon*, for Appellant:

I. The general demurer to defendant's amended answer
should be overruled if the whole answer discloses any one
valid defense. (*People* v. *Merrill*, 26 Cal. 361; 4 Cal. 327,
428; 10 Cal. 233; 26 Cal. 294.)

II. Defendant's plea of payment is sufficient. (2 Van
Sant. Pl. 551.)

III. The allegations in the answer as to formation of
partnership is sufficient. (*Gage* v. *Angell*, 8 How. 335.)

IV. The allegations as to breach of contract were abun-
dantly sufficient. (*Prescott & Booth* v. *Wells, Fargo & Co.*, 3
Nev. 88 to 92.)

V. All the defenses alleged in the answer are strictly in the
nature of actions *ex contractu*. (*Lignot* v. *Redding*, 4 E. D.
Smith, 285; *Schubart* v. *Harteau*, 34 Barb. 447.)

VI. The allegation of plaintiff's insolvency is sufficiently
alleged in defendant's answer. (*Bennett* v. *Whiteside*, 13 Cal.
151–158; Bump's Law and Practice of Bankruptcy, 448–9.)

VII. Section 47 of the civil practice act in defining what
is a counter-claim is conclusive of the validity of defend-
ant's defenses in this action. (1 C. L. 1110.)  See con-
struction of same section in California. (*Stoddard* v. *Tread-*

*well,* 26 Cal. 309.)   To the same effect: *Patterson* v. *Richords,* 22 Barb. 146; *Gleason* v. *Moen,* 2 Duer. 639; *Lignot* v. *Redding,* 4 E. D. Smith, 162.

VIII.  A partnership can only exist by force of a contract, express or implied, and an action to recover a balance due from one partner to another, is an action on contract. (*Gage* v. *Angell,* 8 How. 335.)   Cited as authority and approved in: 11 Abb. Pr. 213; 13 How. Pr. 242; 19 Abb. Pr. 196; 25 N. Y. (11 Smith) 628; 28 N. Y. (1 Tiff.) 462; 2d vol. 3d ed. Whit. Prac. 161, par. 7 and 8.   A claim for unliquidated damages for breach of contract has been held a valid counter-claim in an independent action *ex contractu.* (*Lignot* v. *Redding,* 4 E. D. Smith, 285; *Schubart* v. *Harteau,* 34 Barb. 447.)

IX.  If the court should conclude that a valid counter-claim is disclosed, but not plead correctly, then the court would allow defendant to so amend. (*Gerren* v. *Huhn & Hunt S. M. Co.,* 10 Nev. 139–41.)

X.  The demurrer should have pointed out the defects relied on. (*Treadway* v. *Wilder,* 8 Nev. 91.)

*Boardman & Varian,* for Respondent:

I.  The proposition that one partner cannot sue at law his copartner, pending the copartnership, is well settled. (Pars. on Part., 278–8 *et seq.; Russell* v. *Ford,* 2 Cal. 86; *Stone* v. *Fouse,* 3 Cal. 292; *Nugent* v. *Stock,* 4 Cal. 318; *Pio Pico* v. *Cuyas,* 47 Cal. 175; *Ross* v. *Cornell,* 45 Cal. 134.)

The claims here set up cannot stand as defenses. (Pars., *supra,* 282; *Ives* v. *Miller,* 19 Barb. 196; *Haskell* v. *Moore,* 29 Cal. 443.)   It is true that an action for damages may be sustained upon a breach of an express stipulation between partners, but not when such breach or stipulation involves the whole partnership business and accounts. (Pars. on Part. 288.)

In this case, both breach and stipulation involve partnership business, and the matters arising out of the breach of the stipulation could not be adjusted without a consideration of the entire partnership business, which now remains

unsettled. The case of *Stone* v. *Fouse, supra,* seems to be on all fours with the case at bar. (3 Cal. 292.)

II. So far as the agreement to accept payment of the note out of partnership proceeds is concerned, we say that it is in effect adding new parties to the instrument, and also varying the written obligation by parol. (Pars. on Part., 286; Pars. Notes and Bills, ed. 1869, 501–06 *et seq.*)

III. The allegations in the answer are not sufficient to warrant equitable interference by the court. (1 Story's Eq., sec. 673; Pars. Part., 474 *et seq.*)

IV. The sufficiency of a counter-claim is tested by the same rule as a complaint. The defenses in this case being equitable, must be pleaded as fully as if seeking affirmative relief in chancery by bill. (*Bruck* v. *Tucker,* 42 Cal. 352.)

*Thomas E. Haydon,* in reply:

I. The case of *Ives* v. *Miller* (19 Barb. 196), cited by respondent is really overruled by weight of authority. *Gage* v. *Angell* (8 How. 335), is cited as authority for the proposition that the code, (sec. 150, which is substantially our sec. 47 of Pr. Act) secures to defendant the right to interpose as many defenses as he has, whether legal, equitable, or both. (25 N. Y. 128; *Dobson* v. *Pierce,* 2 Kern. 156; *Blair* v. *Claxton,* 18 N. Y. 529; *Bank of Toronto* v. *Hunter,* 20 How. 292; *Phillips* v. *Gorham,* 17 N. Y. 270.) *Gage* v. *Angell,* is also cited as authority for the proposition that an alleged balance that will be found due on settlement of partnership accounts may be set off against an action arising out of another contract: in 13 How. 249; 11 Abb. 213; 19 Abb. 196; 28 N. Y. (1 Tiff.) 412–462. But *Ives* v. *Miller* (19 Barb. 202), decides that if the plaintiff on final settlement will be indebted to the defendant, and is insolvent, the latter will be relieved by a cross-action or by a proper answer on the ground of such insolvency. The answer of defendant here alleges the insolvency of plaintiff, and shows defendant exactly within the rule of *Ives* v. *Miller, supra.* This shows the pertinency of the allegation of insolvency of plaintiff, and brings the counter-claim of defendant within all equitable rules on the subject. (*Hobbs* v. *Duff,* 23 Cal. 625–29.)

By the Court, BEATTY, J.:

This is a suit upon a promissory note of the defendant, dated in December, 1873, for two hundred and ninety dollars, payable to the plaintiff one day after date, and upon an account for goods sold and money advanced by the plaintiff to the defendant prior to the commencement of the action, which was on July 31, 1875. The amount claimed on the account is nine hundred and fifty-eight dollars and seventy-five cents. The defendant admits an original indebtedness of nearly the amount claimed, but pleads payment and counter-claims. The plaintiff demurred to the answer on the general ground that the facts stated therein did not constitute any defense to the action, and the demurrer, as to the counter-claims, was sustained. The defendant declining to amend, plaintiff had judgment and the defendant appeals. The only question to be decided is whether the court erred in sustaining the demurrer. The terms of the order in question are not very definite, and there is a difference of opinion between counsel as to what portions of the answer were held to be insufficient. It will not be necessary, however, to give any precise construction to the order, as we are of opinion it is erroneous in sustaining the demurrer to the extent to which respondent admits it was sustained.

Among other matters, the defendant alleges that on the twenty-seventh of May, 1874, he and the plaintiff entered into a copartnership in the business of operating a saw-mill near Verdi, on the Truckee river, and that a part of their agreement was that the plaintiff was to "furnish supplies of goods, wares and merchandise from the store of plaintiff to defendant, and for such partnership business, at said mill, and take his pay for such goods, wares and merchandise out of the sales of lumber and other produce of said mill, and also to take the amount of principal and interest of defendant's note, then due and owing from defendant to plaintiff, out of the lumber and produce of said mill, in kind, as plaintiff needed the same, or out of the proceeds of sales of such lumber and produce of said mill." It is al-

leged that under this agreement they entered upon and continued to carry on said copartnership operations from May 27, 1874, to January 5, 1875, and that out of said partnership operations defendant paid to plaintiff, over and above his share the sum of one thousand dollars on the note and account sued on.

For a further and separate defense, it is alleged that the parties entered into the partnership above mentioned and that, after paying all debts and expenses, plaintiff had received over and above his share of the proceeds of the partnership business one thousand dollars of the share of the defendant; "that the plaintiff is utterly insolvent and very largely indebted over and above the value of all and any property owned by him that is not exempt from execution, and if defendant were compelled to pay the amount of plaintiff's demands against the defendant, he (defendant) would be unable to collect his demands due him by reason of said partnership transactions aforesaid, and would be irreparably injured, and defendant therefore prays that the indebtedness of plaintiff to this defendant, on account of such partnership transactions, be ascertained and be allowed to this defendant as an offset and counter-claim to plaintiff's demands against defendant that shall be found due in this suit to plaintiff from defendant."

For a further and separate defense to the action, the defendant alleges that on the twenty-seventh of May, A. D. 1874, he was the owner of the saw-mill above mentioned and also of certain water rights appurtenant thereto, the whole of the value of five thousand dollars; that, in consideration of the plaintiff's entering into the written agreement hereinafter set forth, he on that day sold and conveyed to the plaintiff an undivided half of said property, and that the plaintiff thereafter occupied and possessed it in common with him. The contract executed by plaintiff in consideration of this sale was as follows:

"This agreement, made this twenty-seventh day of May, in the year of our Lord 1874, between J. P. Foulks, of Washoe, State of Nevada, party of the first part, and B. F. Rhodes, of the county and state aforesaid, party of the sec-

ond part: The said J. P. Foulks, party of the first part, for and in consideration of quitclaim deed from the said B. F. Rhodes of the undivided half of the following described property, * * * agrees to construct or build a substantial V flume of planks, the sides to be one and one-half inches thick, one side to be twenty inches wide and the other twenty-one and one-half inches; said flume to be built from the said Proctor mill to the road running on the north side of William Merrill's field, near the Truckee river, Washoe county, Nevada; said flume to be completed on or before September 25, 1874. The undivided one-half of said flume, also one-half of the water running through said flume, shall be the property of the said B. F. Rhodes; the said J. B. Foulks to secure the right of way for a flume from the Truckee river to the depot near Verdi. The above property shall be the company property of the said J. P. Foulks and B. F. Rhodes.                    J. P. FOULKS.
                        "B. F. RHODES."

The breach of this contract by the plaintiff is alleged and damages claimed therefor in an amount more than equal to the demands sued on.

Whether the order sustaining the demurrer applies to the first of these defenses is a point in dispute, but it is conceded that it applies to the last two. If it did apply to the first, it was in so far erroneous, for the reason that the allegations of that count amount substantially to this: That the plaintiff agreed to put in, as a part of his contribution to the capital stock of the partnership about to be formed, the note of defendant, then due and payable, and the supplies which are the subject of the account sued on. If the facts alleged are true, as the demurrer confesses them to be, it does not lie in the mouth of the plaintiff to object that the defendant cannot be allowed to plead an unsettled partnership account as a counter-claim to a demand which is independent of the partnership and the subject of an action at law between the partners. The answer to this proposition is obvious. The demands sued on are not independent of the partnership. By the express agreement of the plaintiff they are a part of the partnership affairs, and cannot be settled except through a settlement of the partnership affairs. The objection of the respondent, that the agree-

ment that the note should be paid out of the avails of the partnership business was invalid as an attempt to vary by parol the terms of a written instrument, is not sustained by the authorities referred to. They all relate to parol agreements which are contemporaneous with the execution of the written agreement, and which are intended to change its effect. Here was nothing of the kind. The note in question was then due and payable, and on a new consideration, *i. e.*, the formation of the partnership, plaintiff agreed that it might be paid in a particular way, by crediting him with so much in the partnership accounts. This was the effect, if not the terms, of the parol agreement. It was not a variation of the written agreement, but a satisfaction of it.

We will, however, consider the demurrer more particularly with reference to the second and third defenses above stated.

This is an action arising upon contract, and therefore any other cause of action arising also upon contract, and existing at the commencement of the action, is a good counter-claim. (Comp. L., 1,110.) If the second and third defenses set forth causes of action existing at the commencement of the action, it cannot of course be denied that they are causes of action arising upon contract. The respondent contends that they do not show causes of action existing at the commencement of this action, because they embrace the partnership affairs of the plaintiff and defendant, and it does not appear that there has ever been any settlement of the partnership accounts, or even a dissolution of the copartnership, or any reason for a court of equity to decree a dissolution. It is true the answer does not show any settlement of the partnership accounts, and there is no express allegation that the partnership has been dissolved, though the allegation that the partnership business was carried on from May 27, 1874, to January 5, 1875, might warrant the inference that it was dissolved at the latter date. But, however this may be, the authorities are conflicting upon the question whether a balance, which it is claimed will be found due on the settlement of a partnership account, can be pleaded by one partner as a counter-claim to an indi-

vidual demand of his copartner, even where the partnership has been dissolved before the action was commenced. *Gage* v. *Angell* (8 How. Pr., 325), affirms the proposition, and *Ives* v. *Miller* (19 Barb. 197), denies it. The reasoning of the former decision is more satisfactory and more in consonance with the spirit of the code than that of the latter one; but it is unnecessary to decide in this case which lays down the law correctly. Taking the latter for authority, it is conclusive against the respondent. The court say (p. 202): "There are cases of natural equity, irrespective of any statute, where the court will interfere. If the plaintiff, on final settlement, will be indebted to the defendant, and is insolvent, and defendant, therefore, in danger of losing what may be so found due to him, the latter would be entitled to relief by a cross-action, if not by a proper answer in this, on the ground of his peculiar equity."

The expressions here quoted were perhaps *obiter* in that case, but they are well warranted by the decisions referred to, and they express our opinion on the question under consideration. Admitting that the claim of the defendant arising out of the unsettled partnership accounts could not be properly pleaded as a set-off to the claims of the plaintiff, there are facts stated which would entitle defendant to maintain a cross-action. He shows that the plaintiff is insolvent and that he will never be able to collect what will be due him on settlement of the partnership accounts; in short, that he will be irreparably damaged by being compelled to pay plaintiff's demands. It makes no difference, therefore, whether the partnership was dissolved or not before the commencement of this action. The insolvency of the plaintiff, and the fact that he will be found indebted, which are plainly alleged, afford good grounds for invoking the equitable powers of the court to settle the partnership accounts before trying the legal issues involved in the case.

The third defense does not involve the partnership affairs. It is nowhere alleged that the plaintiff and defendant were partners in any business except the running of the sawmill. The plaintiff, it is true, acquired his half interest in the saw-mill in consideration of executing the written agree-

ment, the breach of which is the subject of the third defense; but the agreement to operate the mill as partners was entirely distinct from the written agreement, and the latter is just as independent of the former as it would have been if it had been a promissory note for two thousand five hundred dollars, instead of an agreement to build a V flume. The agreement to build the flume and convey one-half of it to the defendant when completed was the purchase-price of a half interest in the mill, and the plaintiff is liable to the defendant for a breach of that agreement, just as he would have been liable on his promissory note. It may be that the last clause of the written agreement would be construed as a stipulation that the parties would operate the flume as partners; but if so, it was a stipulation which could only take effect on the completion of the flume, and the allegation is that the flume never was completed. The damages which the defendant has sustained by reason of the failure of the plaintiff to fulfill his agreement to build the flume may not only be ascertained without settling the accounts of the saw-mill business, but could not properly be brought into those accounts. (Par. on Part. 276; Collyer on Part., secs. 269, 270, 271.)

The judgment of the district court is reversed and the case remanded for further proceedings, in accordance with the views herein expressed.